**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DEBORAH DAVIS<br>408 FIR STREET<br>WARMINSTER, PA 18974 | : | CIVIL ACTION |
| v. | : | No. |
| THE PRUDENTIAL INSURANCE<br>COMPANY OF AMERICA<br>751 BROAD STREET<br>NEWARK, NJ 07102 | : | **ERISA- JURY TRIAL IS NOT REQUESTED** |

## COMPLAINT

### I. Jurisdictional Statement

1. Deborah Davis' claim relates to an "employee welfare benefit plan" as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* The subject Group Short Term and Long Term Disability Plans of Prudential Insurance Company of America, her employer, constitutes a plan under ERISA. Plaintiff alleges that this Court's jurisdiction is additionally invoked pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e) and (f).

2. Venue is proper under ERISA, 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because such action may be brought where (1) the plan is administered, (2) where the breach took place, or (3) where the Defendant resides or may be found.

3. At all times relevant herein, and for a significant period of time prior thereto, Ms. Davis was a Customer Service Associate, employed by Prudential, and as such has standing to

4. Venue is proper in the Eastern District of Pennsylvania. 29 U.S.C. 1132(e)(2), 28 U.S.C. § 1391.

## II. Nature of Action

5. This is a claim for an award to Plaintiff of Short Term and Long Term Disability Insurance Benefits pursuant to a policy of insurance underwritten by the Prudential Insurance Company of America to provide Long Term Disability Insurance Benefits ("Plan") to employees of the Prudential Insurance Company of America. This action is brought pursuant to § 502(a)(1)(B) of ERISA (29 U.S.C. § 1132(a)(1)(B)).

6. Prudential Insurance Company of America was both Plaintiff's employer at the time Plaintiff's disability began and also the underwriter of the Group Long Term Disability Plan at issue in this case.

## III. The Parties

7. Plaintiff, Deborah Davis, ("Ms. Davis"), D.O.B. May 12, 1957, is an adult individual who is a citizen of the Commonwealth of Pennsylvania, County of Bucks, residing at 408 Fir Street, Warminster, PA 18974.

8. At all times relevant, Ms. Davis had been a Customer Service Associate employed by the policyholder, Prudential.

9. The Prudential Insurance Company of America ("Prudential") is a part of Prudential Financial, Inc. and its subsidiary companies whose principal place of business and headquarters is located in the State of New Jersey, County of Essex, at 751 Broad Street, Newark, New Jersey 07102.

10. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1); and incident to her employment, Ms. Davis received

coverage under the Plan as a "participant" as defined by 29 U.S.C. § 1002(7). This claim relates to the forgoing Plan.

11. At all times relevant, Prudential was a fiduciary of the Long Term Disability Plan within the meaning of ERISA § 3 (21), 29 U.S.C. § 1002(21)(A) in that Lincoln was appointed by the Plan Administrator for the Plan as a "named fiduciary" and exercised authority and control over the payment of Long Term disability benefits, which are Plan assets.

12. Prudential is also the "appropriate named fiduciary" of the Group Long Term Disability Plan as described in 29 C.F.R. § 2560.503-1(g)(2), and therefore functioned as the Group Long Term Disability Plan Administrator for claims procedure proposes.

## IV. <u>Policies</u>

13. On August 19, 2013, Ms. Davis was hired by Prudential as a financial professional.

14. On July 24, 2017, Ms. Davis transferred to a position as a Customer Service Representative.

15. As an employee of Prudential, Ms. Davis was covered by and eligible to receive Short Term Disability (STD) benefits.

16. To date, Ms. Davis has been unable to obtain a copy of the STD Policy.

17. It is believed and averred that per the letter from Prudential on April 18, 2018, that the STD Policy defines *"Disability" as:*

- *You are unable to perform the material and substantial duties of your regular occupation due to your sickness, or injury or you are deemed by the Federal Aviation Administration (FAA) to be mentally or physically unfit to fly as a commercial pilot; and*
- *You are under the regular care of a doctor,*
- *You have a 20% or more loss in your monthly earnings due to the sickness or injury.*
- 

18. It is further believed and averred that the STD Policy has an Elimination Period of seven days and provides a maximum disability benefit for a period of up to six months.

19. On January 1, 2016, Prudential issued Group Long Term Disability ("LTD") Insurance coverage to Prudential Insurance Company of America, Policy No. G-01690. **Attached as Plaintiff's Exhibit 1.**

20. The LTD Policy provides income replacement of up to 65% of Ms. Davis' monthly earnings up to a maximum of $25,000.00.

21. The LTD Policy's elimination period extended from the start of the period of disability to the date upon which Ms. Davis has exhausted her STD benefits. The LTD elimination period extended for a period of 6 months from April 3, 2018 through October 2, 2018.

22. During the Elimination Period and for the first 12 months of LTD payments, the LTD Policy defines *"Disability" as:*

- *You are unable to perform the material and substantial duties of your regular occupation due to your sickness, or injury or you are deemed by the Federal Aviation Administration (FAA) to be mentally or physically unfit to fly as a commercial pilot; and*
- *You are under the regular care of a doctor,*
- *You have a 20% or more loss in your monthly earnings due to the sickness or injury.*

23. The Policy has a lifetime limited pay period of 24 months for disabilities that Prudential determines are due in whole or in part to mental illness.

## V. Failure to Pay All Benefits Due Under the Group Short Term Disability Plan and Denial of Benefits Under the Group Long Term Disability Plan

### I. The Disability Claim – Medical History

24. Ms. Davis has a well-documented history of treatment for anxiety and depression for approximately 20 years.

25. Ms. Davis has been prescribed and has taken psychotropic medication, including Zoloft and lorazepam, since 2001.

26. Ms. Davis has also been diagnosed and treated for diverticulosis, hyperlipidemia, costochondritis and degenerative disease of the lower back.

27. On or before March 30, 2018, Ms. Davis was 60-year-old Customer Service Associate at Prudential.

28. Ms. Davis' anxiety and depression had been managed well until August 24, 2017.

29. On August 24, 2017, Ms. Davis witnessed a co-worked collapse and lose consciousness while at work.

30. Ms. Davis attempted to resuscitate her co-worker and remained with him until emergency personnel arrived approximately 20 minutes later.

31. Prior to August 24, 2017, Ms. Davis' anxiety and depression were well managed.

32. After August 24, 2017, Ms. Davis' symptoms increased and she was also diagnosed with PTSD.

33. On April 3, 2018, Ms. Davis was admitted to Brook Glen Behavioral Hospital for inpatient psychiatric care due to symptoms of severe depression, anxiety and PTSD.

34. On April 6, 2018, Ms. Davis was discharged from Brook Glen Behavioral Hospital.

35. Ms. Davis' last day of work for Prudential was March 30, 2018.

**II. <u>The Disability Claim – Claim for Benefits</u>**

36. On or about April 4, 2018, Ms. Davis filed a claim for STD benefits alleging that she was unable to perform the duties of his own occupation due to the symptoms of major depression, anxiety and post-traumatic stress disorder.

37. On April 10, 2018, Ronald Luber, DO, noted that Ms. Davis underwent severe trauma when she resuscitated a patient who had a seizure and cardiac arrest.

38. Dr. Luber also noted that Ms. Davis cannot work due to decreased concentration and increased anxieties.

39. By letter dated April 18, 2018, Prudential acknowledged receipt of Ms. Davis' claim for STD benefits and indicated that Ms. Davis' claim for STD benefits was approved effective April 10, 2018 through April 27, 2018.

40. On April 24, 2018, Dr. Luber noted that Ms. Davis is being seen by a psychiatrist, that she starting a course of Vrylar 1.5mg at night for her mood disorder and PTSD and that Ms. Davis suffers from PTSD and is unable to work.

41. On May 5, 2018, Dr. Therapist Steve Gursky completed an Attending Physician Behavioral Health Statement and indicated that sleep was a struggle for Ms. Davis, that she was prone to emotional outbursts and flashbacks and that it was too soon to determine when she could return to work.

42. On May 8, 2018, Dr. Luber noted that Ms. Davis is seeing a therapist two times a week and that Ms. Davis is not sleeping.

43. Dr. Luber also noted that PTSD is still present from Ms. Davis' previous traumas and that she is still having anxiety.

44. On May 22, 2018, Dr. Luber noted that Ms. Davis was now on Seroquel and Ativan to help with her severe anxiety.

45. Dr. Luber also noted that Ms. Davis continues to have severe anxiety, depression, is not sleeping and a mood disorder.

46. On June 19, 2018, Dr. Luber noted that Ms. Davis was suffering from memory problems due to PTSD.

47. On July 11, 2018, Dr. Luber completed a Health Care Provider Statement in which he indicated that Ms. Davis was limited from work because she was not sleeping, suffered from anxiety, poor concentration and memory changes.

48. Dr. Luber opined that Ms. Davis was not fit to return to work.

49. On August 28, 2018, Therapist Steve Gursky, completed an Attending Physician Behavioral Health Statement in which he indicated that Ms. Davis continues to suffer from PTSD and that her return to work is "undetermined."

50. On September 5, 2018, Prudential "suspended" Ms. Davis' STD benefits effective September 1, 2018 pending receipt of additional medical information.

51. In its letter dated September 5, 2018, Prudential's purported basis for suspending benefits was that "we are unable to assess how your current level of functioning prevents you from performing the duties of your regular occupation."

52. On October 10, 2018, Prudential terminated Ms. Davis' STD benefits and advised her that she was not eligible for LTD benefits.

### III. The Disability Claim – Request for Reconsideration of Termination of STD and LTD Benefits

53. On October 16, 2018, Therapist Steve Gursky wrote a letter to Prudential's Disability Claims Manager Samantha Millette advising her that Prudential had mischaracterized his treatment records and again opined that Ms. Davis returning to work at this time would be detrimental to her mental health.

54. On October 24, 2018, Alexander Kanevsky, M.D. wrote a statement indicating that Ms. Davis was suffering from medication intolerance, has not been stabilized on medication and that she is unable to return to work.

55. On October 26, 2018, Therapist Steve Gursky wrote a statement indicating that Ms. Davis' PTSD has enhanced her depression and that it is not clinically wise for Ms. Davis to attempt to work while in intensive treatment.

56. On October 30, 2018, Ms. Davis wrote a letter to Prudential seeking reconsideration of its decision to suspend STD benefits.

57. On November 19, 2018, Prudential contracted with R3 Continuum to have a paper review conducted by a medical consultant.

58. In that request for review, Prudential Complex Senior Appeals Specialist Joseph Walles provided referral questions to R3 in order to guide R3's medical consultant to agree with the conclusions of Prudential's Behavioral Health Clinician, Jon Vigneault, RN-BSN, that Ms. Davis was not disabled.

59. On December 6, 2018, medical consultant Monique Mendez-Timmons, Psy.D issued a report based upon a paper review agreeing with Nurse Vigneault and finding that Ms. Davis was not disabled.

60. On January 3, 2019, Ms. Davis underwent a psychiatric examination conducted by R3 medical consultant Dale Panzer, M.D.

61. As part of the IME, Ms. Davis was administered the MMPI-2RF by clinical psychologist Jennifer Kurtz, Psy.D.

62. Dr. Kurtz noted that the testing showed that Ms. Davis had "emotional distress with severe depressive symptoms."

63. Dr. Kurtz also noted that although there were elevations in the validity scale "which could reflect an invalid profile due to exaggeration", this result "could also indicate genuine severe psychopathology or significant distress."

64. Dr. Panzer dismissed the findings of his own clinical psychologist, Dr. Kurtz, who administered the MMPI-2RF and found that Ms. Davis was in emotional distress and suffered from severe depressive symptoms and determined that Ms. Davis simply has supported diagnoses of persistent depressive disorder and unspecified anxiety disorder.

65. Dr. Panzer indicated that Ms. Davis does not meet the DSM-V criteria for PTSD because Dr. Panzer did not find evidence that Ms. Davis reexperiencing of the traumatic event, hyperarousal, or avoidance behavior.

66. Apparently Dr. Panzer failed to thoroughly review the report of R3 medical consultant, Monique Mendez-Timmons, Psy.D, who stated on Page 2 of her December 6, 2018 report that Ms. Davis' symptoms include "**flashbacks, reexperiencing** (emphasis added) and feelings of worry, guilt and sadness."

67. Dr. Panzer also apparently missed that Dr. Mendez noted that Ms. Davis's limitations and restrictions were reported as including not being to take phone calls from customers, interact with others, or **go into the building where the traumatic event occurred**." (emphasis added)

68. Contrary to Dr. Panzer's opinion, all of Ms. Davis's treatment providers have diagnosed Ms. Davis with PTSD and major depression.

69. On June 3, 2019, Prudential denied Ms. Davis' request for reconsideration and upheld its termination Ms. Davis' claim for STD benefits and denial of her claim for LTD benefits.

## IV. The Disability Claim – Appeal of Denial of Benefits

70. On September 12, 2019, Ms. Davis filed an administrative appeal of Prudential's termination of STD benefits and denial of LTD benefits.

71. As part of the administrative appeal, Ms. Davis provided Prudential with additional medical and psychiatric records which document the severity of her symptoms and conclusively show that Ms. Davis was unable to perform the main duties of her occupation as a Customer Service Representative at Prudential.

72. As part of the administrative appeal, Ms. Davis provided Prudential with completed interrogatories answered and signed by Dr. Luber.

73. In these interrogatories dated September 9, 2019, Dr. Luber indicated that multiple tests document objective medical evidence of Ms. Davis' psychiatric conditions and that these conditions prevent her from returning to work.

74. On November 18, 2019, Prudential denied Ms. Davis' appeal and upheld it decision to terminate Ms. Davis STD benefits and deny LTD benefits.

75. During the first and second level appeals, Prudential cherry-picked amongst the available medical information and impermissibly gave lesser weight to those records which supported disability.

76. Ms. Davis has exhausted all administrative remedies.

**COUNT I. – FIRST CAUSE OF ACTION**
**[FOR DECLARATORY RELIEF PURSUANT TO 29 U.S.C. § 1132(a)(1)(b)]**

77. Paragraphs 1 through 76 are incorporated herein by reference as if fully set forth at length.

78. An actual controversy exists between Ms. Davis and Defendant arising out of the events alleged herein above. Ms. Davis contends that Defendant has no legal basis for denying terminating STD benefits and denying LTD benefits, which have been wrongfully withheld.

79. Ms. Davis contends that the termination of STD benefits is a breach of the Group Short Term Disability Plan; the practices of the Defendant should be estopped on the basis of

equity; that the practices of Defendant are arbitrary and capricious; that the practices of the Defendant fail to satisfy the minimum requirements of ERISA; and the practices of the Defendant are barred as a matter of law.

80. Ms. Davis contends that the denial of LTD benefits is a breach of the Group Long Term Disability Plan; the practices of the Defendant should be estopped on the basis of equity; that the practices of Defendant are arbitrary and capricious; that the practices of the Defendant fail to satisfy the minimum requirements of ERISA; and the practices of the Defendant are barred as a matter of law.

81. Ms. Davis contends that the decision to terminate STD benefits and deny her appeal for benefits was wrongful, unreasonable, irrational, arbitrary and capricious, solely contrary to the evidence and contrary to the terms of the policy and the law and an abuse of discretion

82. Ms. Davis contends that the decision to deny LTD benefits and deny her appeal for benefits was wrongful, unreasonable, irrational, arbitrary and capricious, solely contrary to the evidence and contrary to the terms of the policy and the law and an abuse of discretion.

**COUNT II – SECOND CAUSE OF ACTION**
**[FOR RECOVERY OF PLAN BENEFITS PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)]**

83. Paragraphs 1 through 82 are incorporated herein by reference as if fully set forth at length.

84. Defendant wrongfully terminated STD benefits and denied LTD benefits based on an unfair, incomplete, arbitrary and capricious review of Ms. Davis' medical information.

85. Under the terms of the Group STD and LTD Plans, the Defendant unreasonably breached its promise to provide Ms. Davis with certain STD and LTD benefits. To date, the Defendant has failed to honor this promise and continues to refuse to pay Ms. Davis all benefits to which she is rightfully entitled.

86. Ms. Davis has satisfied all conditions precedent under the Group STD Plan and is thus eligible to receive STD benefits for the period from September 1, 2018 through September 30, 2018.

87. Ms. Davis has satisfied all conditions precedent under the Group LTD Plan and is thus eligible to receive LTD benefits for the period from the end of the STD period on September 30, 2018 until October 1, 2020.

88. Ms. Davis has not waived or otherwise relinquished her entitlement to benefits under the Group STD and LTD Plans.

89. Ms. Davis seeks reimbursement and compensation for any and all benefits she should have received under the Group STD and LTD Plans.

90. Defendant breached its obligations under ERISA to provide Ms. Davis benefits even though her benefits are covered under the terms of the Group STD and LTD Plans.

91. As a direct and proximate result of the aforementioned conduct of the Defendant in failing to pay benefits to Ms. Davis, she has been damaged in an amount equal to the amount of benefits to which she is entitled under the terms of the STD and LTD Plans.

**WHEREFORE,** Plaintiff Deborah Davis prays for judgment as follows:

A. On Count I:

1. A declaration that Ms. Davis is disabled and entitled to the payment of benefits under the Group STD Plan.
2. A declaration that Ms. Davis is disabled and entitled to the payment of benefits under the Group LTD Plan.
3. A declaration that the Defendant is hereinafter estopped from wrongfully denying Ms. Davis benefits under the Group STD and LTD Plans without a legal basis to do so;
4. A declaration that the Defendant is hereinafter estopped from denying Ms. Davis' benefits as a denial of such benefits is a breach of the Group STD and LTD Plans;
5. A declaration that the Defendant is hereinafter estopped on the basis of equity from continuing to deny disability benefits wrongfully withheld from Ms. Davis;
6. Ms. Davis requests the payment of reasonable attorney fees, costs and interest; and
7. Ms. Davis requests such other and further relief as the Court deems appropriate.

B. On Count II:

1. Ms. Davis seeks a declaration of her right to benefits under the terms of the Group STD Plan
2. Ms. Davis seeks a declaration of her right to benefits under the terms of the Group LTD Plan;
3. Payment of all past benefits due Ms. Davis under the terms of the Plans, with an award of pre-judgment interest;
4. Ms. Davis requests the payment of reasonable attorney fees, costs and interest; and
5. Ms. Davis requests such other and further relief as the Court deems appropriate.

Respectfully submitted,

Zachary Lipschutz, Esq.(Attorney ID 326208)

1818 Market Street, 35th Fl
Philadelphia, PA 19103
P: (215) 587-8400
F: (267) 765-2031
E: ZLipschutz@paworkinjury,com
**Attorney for Plaintiff**
**Deborah Davis**

Dated: August 17, 2021

**ERISA-JURY TRIAL IS NOT DEMANDED**